## PATRICK & TILLMAN et al. v. MATKIN et al.

No. 22529.    Opinion Filed Jan. 26, 1932.

Clayton B. Pierce and A. J. Follens, for petitioners.

Leo J. Williams and M. J. Parmenter, for respondent.

RILEY, J. Petitioners bring this action to review an award of the State Industrial Commission in favor of respondent B. M. Matkin.

Respondent, herein referred to as claimant, was injured on June 7, 1930, while in the employment of petitioners Patrick & Tillman. His injury was caused by a spool of drilling line falling and a piece of timber on the side of the spool striking him on the head, shoulder, and neck. On December 6, 1930, there was filed with the Commission a stipulation and receipt on form No. 7, prescribed by the State Industrial Commission. This stipulation shows the average daily wages of claimant to have been $7; rate of compensation $18 per week; that compensation began June 13, 1930, the period of disability ten weeks and two days, and that disability ceased on August 23, 1927; pay-

ment of compensation in the sum of $186; that the nature of the injury was: "Injury to right arm, shoulder, and neck"; that the extent of disability was "temporary." The stipulation and receipt was indorsed "disapproved KT."

On February 27, 1931, the State Industrial Commission issued notice of hearing, stating:

"A hearing in this case has been requested by some of the parties interested, on the following grounds: Motion of claimant to determine extent of disability. (Disapproval of form 7)."

At the hearing evidence was presented by both parties, and at the close thereof findings were made that:

"3. That by reason of said accidental injury the claimant was temporarily totally disabled from the performance of his ordinary manual labor from June 7th, the date of the accident until August 23, 1930, or for ten weeks and two days beyond the five days waiting period, for which he has been paid compensation in the total sum of $186.

"4. That as a result of said accidental injury claimant's wage-earning capacity thereafter, in the same employment, or otherwise, had decreased from $7 per day to $4 per day by reason of his permanent partial disability."

Award was made for further compensation to date of hearing, 41 weeks at $12 per week, or $492; and then weekly compensation at the same rate continuing until a total of 300 weeks have been paid, subject, however, to reconsideration by the Commission on its own motion or upon the application of any party in interest.

Petitioners first contend that claimant having signed a receipt for compensation and having stipulated that his disability was temporary, he is bound by the stipulation and must show a change of condition in order to confer jurisdiction upon the Commission to award additional compensation.

The rule appears to be that when the stipulation and receipt are filed with and approved by the Commission, it is the basis of an award and such award is final where no further claim is made within one year after payment of compensation ceases.

But in the instant case the stipulation and receipt was "disapproved," and the hearing was had and for the purpose of determining the extent of disability (disapproval of form 7). If the stipulation and receipt had been approved by the Commission, then the award made thereon would have been final, except upon change of condition. Although the stipulation may have been signed by claimant upon the theory that the disability was temporary, claimant was not bound thereby in the absence of approval by the Commission. The filing of the stipulation and receipt simply brings the parties before the Commission for its action. If the stipulation and receipt be approved, the approval thereof is equivalent to an award. If the stipulation and receipt be disapproved, then the Commission having jurisdiction of the parties and subject-matter may set the cause down for hearing for a determination of the extent of the injury and an award. If the facts justify it, the Commission may order the payment of additional compensation. While both parties in the instant case may have in good faith believed that the injury was temporary, and that disability had ceased, yet the evidence may show an entirely different state of facts. The findings of the Commission are in conflict with the facts stated in the stipulation, and if the findings are supported by competent evidence, we deem it immaterial whether the condition found to exist was the result of change of condition or of mistake of the parties as to the nature of the injuries at the time the stipulation was signed.

It is next contended that incompetent evidence was admitted over the objection of petitioners. In this contention we think there is merit. Dr. C. C. Shaw was called as a witness for claimant and testified in substance he had taken an X-ray photograph of claimant's spinal column. He was permitted, over the objection of petitioners and without producing the X-ray photograph and without same having been offered in evidence, to testify that the X-ray showed a fracture of the left transverse process of the first lumbar vertebra, a light lateral displacement of the fifth lumbar vertebra, also a left curvature.

Petitioners objected to this evidence unless the X-ray be produced. The X-ray, of course, would be the best evidence as to what it showed. However, to the layman an X-ray means but little. Some, of course, are plain and easily understood, but ordinarily they must be explained or interpreted by an expert, one having had experience and special training along that line. Dr. Shaw as an expert was a competent witness to testify as to what the X-ray disclosed, but at the same time the petitioners were entitled to see and examine the picture for the purpose of cross-examination, and submit the same to other experts, if they so desired for interpretation.

The better rule would have been to require claimant to produce the X-ray picture

and offer same in evidence, and then have Dr. Shaw testify as an expert as to what it showed.

In Elzig v. Bales (Iowa) 112 N. W. 540, it is said:

"The latter were not admissible because not the best evidence attainable. Photographs are received as either secondary or demonstrative evidence, according to their use. * * * As secondary evidence, the photograph represents the original, whether it be a writing, signature, or human face. As demonstrative evidence, they serve to explain or illustrate, and apply the testimony, and are aids to the jury in comprehending the questions in dispute. No argument is required to show that when taken for either purpose they are the best evidence of what appears on them. If the rule adopted by the trial court were to prevail, a physician might testify to the internal conditions of the human body without other information than that afforded by an unauthenticated skiagraph. That X-ray photographs, when properly verified, are admissible in evidence, is fully settled by the authorities."

In Marion v. B. G. Coon Const. Co. (N. Y.) 110 N. E. 333, it was said:

"In brief, X-ray photographs of the back and pelvic region, unexplained by the evidence of one who qualifies as an expert in the interpretation of such plates, may tend to mislead rather than to aid, not the layman alone, but even a general practitioner of medicine. The evidence of the expert is proper, if not essential, in aid of the plates. * * *

"We do not hold that it was incumbent upon the defendant to demand the production of the plates in order to have the benefit of this exception. If the objection was properly made, no demand to produce the plates was necessary. We do not sanction a ruling of the trial court permitting a witness to give evidence, over a proper objection, of what he found to be shown by X-ray plates not produced in court and not shown by competent proof to be correct representations of the portion of the body examined by aid of the X-rays; when it appears that the evidence thus admitted affects the substantial rights of the parties, such ruling would be error."

There are cases which hold that in such circumstances it is incumbent upon the party objecting to such evidence to demand the production of the photographs, and if refused to resort to the process of the court to force the production thereof. But we think the better rule is, when proper objection is made, to reject such evidence or require the party relying upon the X-ray photograph to produce and offer same in evidence, or show its loss, destruction, or other proper reason why it cannot be produced.

In fairness to both sides the X-ray photograph should be produced and appear in evidence with full opportunity to both sides to offer expert testimony in explanation or interpretation thereof.

Claimant's case depended almost entirely upon the condition of his back and whether or not same is attributable to and caused by the accidental injury. It may be that petitioners could have demonstrated to the satisfaction of the Commission from the X-ray photograph, had it been produced for their examination, that the condition contended for by claimant did not exist, or that, if it did exist, it was brought about by causes other than the accidental injury. That the opinion of Dr. Shaw as to the condition of claimant and its cause was based largely upon the X-ray photograph, is apparent from the record. We cannot lend our sanction to a rule permitting a witness to give evidence of what he found to be shown by an X-ray photograph not produced and not shown by competent proof to be a correct representation of that part of the body purported to be shown by it.

It is next urged that the Commission erred in basing the award upon two-thirds the difference between claimant's daily wage before the injury, which was $7 per day, and the amount he was receiving just before the hearing, which was $4 per day. They contend that the difference in wages was due to industrial conditions, that is, a decrease in wages generally, rather than diminution of ability to perform labor in the same employment or otherwise.

With this contention we cannot agree. True, when he returned to work he received as much pay as others engaged in the same employment, but it was much lighter work. When he applied to his former employers for work, he was told that they were no longer engaged in that line of work, and he was forced to accept such work as he could find. This paid him at first but $3.60 per day, and afterwards $4. There was no showing that wages in that particular line had declined during the period of his disability, nor was there any showing that wages in the oil field work which he had been doing prior to his injury had declined. There was evidence tending to show that claimant was unable to perform such labor. Thus it appears that there is some evidence tending not only to show claimant was unable to find employment of the same nature, but that he was unable to perform the same labor could he have found it.

There was no error in the amount of the award. It is subject to reconsideration at

any time upon the application of any party in interest and payment may be ordered discontinued upon a proper showing of recovery, or decreased upon showing increase of earning capacity. For the error in admission of incompetent evidence, the award is set aside and the cause remanded to the State Industrial Commission for such further proceedings as to it may seem just and right and not inconsistent with the views herein expressed.

HEFNER, CULLISON, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. CLARK, V. C. J., dissents. LESTER, C. J., absent.