## ROXANA PETROLEUM CORP. et al. v. PARK et al.

No. 25230.  April 10, 1934.

Green & Farmer and Gerald Fitzgerald, for petitioners.

E. W. Jones, for respondents.

CULLISON, V. C. J.  This is an original proceeding before this court by Roxana Petroleum Corporation and its insurance carrier, Aetna Life Insurance Company, petitioners, to review an order of the State Industrial Commission of November 8, 1933, awarding compensation to Jay H. Park, claimant.

The record discloses that on February 21, 1927, claimant received an accidental personal injury while employed by petitioner Roxana Petroleum Corporation, in the nature of a fracture of the right femur midway between hip and knee, through middle third. The accident was occasioned when the ropes, which had been slipping and making it impossible to pull swab, were backed off with a piece of pipe. The driller was unable to get the brake down and the bull rope caught on the wheels of "dog" or helper, the pipe striking claimant in the back and knocking him into the bull rope, which became entangled around his leg, jerking the claimant (tool dresser) into the air and causing him to fall under the calf wheels and levers and against a large post with great force, breaking his right leg.

Medical attention and voluntary compensation were furnished claimant. Claimant was in the hospital one month, out a month, and again in the hospital for two months while the leg was reset.  On August 26, 1927, claimant was examined by Dr. Curt von Wedel, whose report was submitted to the Commission. At the time of that report the doctor found the right leg an inch shorter than the left and the right knee stiff. The doctor was of the opinion that the disability would not be permanent, believing that three months of the proper treatment should restore the right knee to normal. The doctor's report also stated that while claimant alleged his back had been injured at the time of the accident, he believed the disability limited to the right leg.

A stipulation and receipt was entered into between the parties designating the extent of disability as 50 per cent. "permanent partial" loss of use of the injured right leg, whereby claimant signed that he received $922.03, making a total compensation paid of $1,534.03.

The parties entered into an agreement as to the facts with relation to the injury and payment of compensation therefor, no filing date shown on either this form 14 or the form 7 just referred to.  Said agreement recited the payment of said $922.03, allegedly for the remaining 53½ weeks of the 87½ weeks for 50 per cent. loss of use of right leg, it being stated that 34 weeks had been paid to October 23, 1927.  The nature of the disability, whether permanent, total, or partial, is stated: "Claimant has some stiffness in right knee, also leg is about one inch short." On June 29, 1929, the insurance carrier's adjuster for petitioner filed an affidavit to the effect that $612 had been paid claimant for the 34 weeks between the injury and October 21, 1927, which affidavit bears marks of approval July 2, 1929, and "closed."

Thereafter, claimant filed with the Commission "motion to reopen" (no filing date shown), asking that the cause be reopened to determine the extent of disability and liability. Claimant alleged a change of condition for the worse by reason of the injury since July 2, 1929 (the date of the purported closing of the case), and alleges that he is now suffering from a permanent partial disability.

Pursuant to proper notice given, a hearing was had June 10, 1933, at which the parties stipulated that claimant was injured February 21, 1927, while employed by petitioner in a hazardous occupation within the Compensation Act, and that claimant was off duty as a result thereof from date

of injury to October 23, 1927, at which time he returned to work for petitioner, and is still working for them. That the parties had agreed on form 14 to pay claimant 87½ weeks' compensation at $18 per week, 34 weeks to be paid to October 23, 1927, agreeing to pay, and have this day, June 10, 1933, paid, the remaining 53½ weeks in one lump sum settlement, the payment amounting to $922.03, same being for 50 per cent. to the right leg.

The claimant testified in reply to five questions, concerning his name, the fact he settled with the company in the Exchange Bank Building (3d floor), Tulsa, Okla., at which time they represented a 50 per cent. loss of the leg when they settled with claimant. Claimant was then asked what the company said about the Commission acting upon this award, to which objection was made for the reason that it is stipulated in the record "as to the injury, the disability and the settlement made." Attorney for claimant signified that the stipulation was all right so far as claimant was concerned, and Inspector W. A. McInnes ordered the record to show it will be submitted. The employer and insurance carrier then moved the Commission to dismiss claimant's motion to reopen on the grounds that claimant had been paid for 50 per cent. loss of use of right leg, and that no showing had been made justifying the reopening of the cause. The matter was taken up with the Commission proper and the demurrer was overruled, exceptions allowed, and the case continued to the Tulsa docket.

Pursuant to proper notice being given all parties interested, a second hearing was held September 1, 1933, at which time the following proceedings were had before testimony was taken:

"By Mr. Ford (adjuster for the Aetna Life Insurance Company): Come now the respondent and insurance carrier and objects to the introduction of any testimony in this cause at this time upon the claimant's motion to reopen and award further compensation, for the reason claimant has been paid compensation from date of injury to and including the date upon which he returned to work, February 21, 1927, to October 23, 1927; and subsequent thereto, on November 1, 1927, settlement agreement was entered into by and between the claimant and respondent and insurance carrier on form 14, by the terms of which claimant was paid compensation equivalent to 50 per cent. loss of use of the leg, or a total paid the claimant from date of injury to and including the date settlement was made, on November 1, 1927, of 87½ weeks' compensation at the rate of $18 per week, or $1,575. This settlement was on the basis of any and all compensation due the claimant for temporary total and permanent partial disability. Form 14, signed by the claimant, states in answer to question No. 7, '34 weeks paid claimant to October 23, 1927. Agree to pay and have this day paid remaining 53½ weeks in one lump sum less the usual discount, the payment amounting to $922.03.' By the Court: The court will have to take issue with the statement: 'compensation has been paid for "any and all."' By Mr. Ford: We withdraw the statement. By the Court: All right. By the Court: The motion is overruled. By Mr. Ford: Exception. By the Court: Exception allowed. By the Claimant: Comes now the claimant by its (his) attorney, E. W. Jones, and states that the only contention in the above cause at this time is as follows, to wit: Claimant states that a settlement was had in the office of the insurance carrier in the city of Tulsa on or about the 1st day of November 27 (1927) at the instance of the said insurance carrier, on the basis of a 50 per cent. permanent injury to the right leg. This being 87½ weeks' payment at $18 per week, a total of $1,575, which offer was accepted by claimant. The insurance company gave the claimant a check for $922.03, deducting from the amount agreed to be paid in permanent settlement the sums paid prior for temporary compensation, leaving a balance due on permanent settlement the amount of $652.97, and that said sums advanced for temporary disability should not have been so deducted. Wherefore, claimant asks judgment in the amount of $652.97, the amount so alleged and claimed to be due him."

Claimant then testified that he drew temporary compensation from the respondent for 34 weeks by reason of the injury suffered September 21, 1927; that he was asked to settle with respondents and was informed if he would take what Dr. von Wedel offered, to wit, 50 per cent. loss of the leg, they would pay claimant; that claimant was paid $922.03, being figured at the rate of $18 per week; that claimant knew the 50 per cent. loss entitled him to 87½ weeks, or $1,575, and that claimant supposed it was all right when respondents presented him with a check for $652.97, explaining that they would have to deduct what they had paid him (meaning for temporary total), and that claimant has not been paid anything since.

Upon cross-examination, claimant testified concerning the time spent in hospitals, and that during the time he was under the care of a doctor he was paid compensation, same being continued until discharged by the doctor, as able to return to work, at

which time settlement was had and claimant went to work again for the Roxana Petroleum Corporation; that he has been working for them since that time and is still in their employ.

The Commission elicited from the claimant, over objection, the fact that his work was pumping, which claimant explained was a work that a man with no legs could do. Upon recross-examination he testified that when he went to pumping he drew the same wages as other pumpers doing same kind and amount of work in that vicinity, and said wages are no more nor less than the wages paid other pumpers doing same work for the Roxana Petroleum Corporation.

The Commission then ascertained that claimant's present wages are $105 per month, having drawn this amount since he went back to work in November, 1927; that claimant had previously been drawing $310 per month before the injury; that the reason claimant's wages were reduced was that he cannot climb a rig or anything; that claimant had worked steady for respondents for the 12 months period immediately preceding the injury, every day, drawing $10 per day as tool dresser.

The cause was submitted, and on November 8, 1933, the Commission entered the award complained of in this proceeding to review. Said award in its more pertinent parts found:

"(3) That by reason of said accidental injury, the claimant was temporarily totally disabled from the performance of ordinary manual labor from the date of said accidental injury, February 21, 1927, to and including the 23d day of October, 1927, or 34 weeks beyond the five-day waiting period.

"(4) That by reason of said accidental injury, the claimant sustained a 50 per cent. permanent partial disability to his right leg. That compensation has been paid to the claimant in the sum of $1,534.03."

The remainder of the award, as corrected in some minor details by correction order of December 7, 1933, awarded claimant $612, or 34 weeks at $18 per week, on account of the temporary total disability, and $1,575, or 87½ weeks' compensation at $18 per week, on account of the 50 per cent. permanent partial disability of the claimant's right leg due to the said accidental injury, which sums, less the sum of $1,534.03 heretofore paid claimant, makes a total sum of $652.97 due and owing the claimant, and which the respondents were ordered to pay claimant, from which sum claimant was ordered to pay his attorney 20 per cent., or $130.58.

Petitioners herein seek a reversal of the foregoing order upon the proposition that:

"The finding and award of the State Industrial Commission as to partial permanent disability is not supported by the evidence. Conversely, there is no evidence in the case upon which to base the finding and award of partial permanent disability."

Petitioners cite and rely upon City of Yale v. Jones, 166 Okla. 111, 26 P. (2d) 427, and Southern Drilling Company v. Daley, 166 Okla. 33, 25 P. (2d) 1082, together with some nine cases to the general effect that where there is no evidence to support an award, this court should declare as a matter of law that the award of compensation is unauthorized. Claimant refers to Patrick & Tillman v. Matkin, 154 Okla. 232, 7 P. (2d) 414; Magnolia Petroleum Co. v. Allred, 160 Okla. 126, 16 P. (2d) 78, and Industrial Track Construction Co. v. Colthrop, 162 Okla. 274, 19 P. (2d) 1084, as well as Waters v. P. E. Kroehler Mfg. Co., 186 Ill. App. 548, and Addison v. Wood (Mich.) 174 N. W. 149.

The City of Yale Case, cited supra, held that where the Commission had not previously determined the existence, nature, or extent of claimant's permanent disability, it is unnecessary for claimant to establish a change of condition. That case further held that before an agreed statement of facts may become effective, it must be approved by a majority of the Industrial Commission and entered of record in the proper manner. Measured by that case, the form 14 in the instant case did not constitute a prior determination of claimant's permanent disability, and it was unnecessary for claimant to show a change of condition.

However, at the hearing, the claimant had the burden of showing the disability and loss of time that he had suffered, whereupon it would become the duty of the respondents to introduce their evidence in answer or rebuttal thereto. Then it devolved upon the Commission to weigh the evidence and pass upon the questions there involved, viz., (1) temporary total disability, and (2) the amount (percentage) of permanent partial disability, if any.

Petitioners state that the "evidence is clear as to the amount of time lost by the claimant, to wit, the temporary total disability, and of that we have no complaint to make." We observe that the testimony outlined, supra, supports this admission.

Petitioners contend that the record contains no evidence of amount of permanent partial disability upon which the Commission could base the finding of 50 per cent. permanent partial disability.

At the time of the hearing claimant testified that he could not climb a ladder as he had before. This was evidence of some permanent partial disability, but not as to the percentage, which must necessarily be determined by skilled professional men. The medical report filed in 1927, approximately six years before the hearing upon which the award was made, indicated that the right leg was an inch shorter than the left. Further, that claimant's right knee was somewhat stiff and needed prescribed corrective treatment. And that claimant then had a 50 per cent. loss of use of the leg.

This Commission erroneously assumed that the medical report of six years previous was competent evidence of claimant's present condition, and in the absence of other evidence on this point found claimant had 50 per cent. permanent partial disability to the right leg.

As held in Southern Drilling Co. v. Daley, supra, which throws much light upon the case at bar, "competent evidence" means that which the very nature of the thing to be proved requires as the fit and appropriate proof in the particular case.

The fact that the objective symptom of a leg one inch shorter than the other existed six years ago is such a condition as common sense dictates will not be changed by regaining equal length with the other (normal) leg. From this the Commission could deduce that some permanent partial disability existed, but not how much. It might be more or less. Then such a finding of 50 per cent. six years later might do an injustice to the claimant, or, on the other hand, to the employer and insurance carrier.

Under the ruling in the City of Yale Case, supra, there being no adjudication made up to the time of the hearings under discussion, the entire subject was left open for adjudication upon the evidence adduced. By the same reasoning the statement in the stipulation that the extent of disability was **permanent partial,** and the character and extent of the specific injury was "50 per cent. loss of use of right leg," was not binding on either party as to the percentage of possible permanent partial disability of claimant some six years later, which was necessary for the Commission to find from the evidence before making a determination thereof and award therefor.

As said in the Southern Drilling Co. Case, supra: "When the State Industrial Commission acts, on competent evidence, it is the arbiter of the condition (of claimant) as of that time." Thus, a doctor's report of 50 per cent. permanent partial disability to a leg that was one inch short then, with a stiff knee, and the statement that claimant had detailed back injuries suffered at the time the leg was broken, although not found to exist by the doctor, rendered six years previous, has no material tendency to prove a condition of exactly 50 per cent. permanent partial disability to claimant's right leg at the present time. His medical report under the conditions outlined is without probative force in the case at bar.

The case is accordingly affirmed as to the finding of temporary total disability of claimant, and reversed as to the finding of 50 per cent. permanent partial disability of claimant's right leg, and remanded to the Industrial Commission, with directions to conduct a hearing to determine the percentage, if any, of permanent partial disability now suffered by claimant as a result of the accidental injury of February 21, 1927.

SWINDALL, McNEILL, OSBORN, BAYLESS, and BUSBY, JJ., concur. RILEY, C. J., and ANDREWS and WELCH, JJ., absent.