482 So.2d 450 (1986)
Luis HERNANDEZ and Daisy Hernandez, His Wife, Appellants,
v.
Angel PINO, D.D.S. and Federal Insurance Company, a Foreign Corporation Doing Business in Dade County, Florida, Appellees.
No. 84-1881.
District Court of Appeal of Florida, Third District.
January 14, 1986.
Rehearing Denied February 25, 1986.
*451 Winitz, Liroff & Kolsky, Nancy Little Hoffman, Fort Lauderdale, for appellants.
Walton, Lantaff, Schroeder & Carson and Sally R. Doerner, Miami, for appellees.
Before HENDRY, HUBBART and FERGUSON, JJ.
FERGUSON, Judge.
Plaintiffs in a malpractice action appeal from a final summary judgment entered for defendant dentist where X-rays were lost after defendant released them to plaintiffs' former attorney. We reverse.
Plaintiff Luis Hernandez suffers from holes in his palate owing to a congenital defect. The holes were covered by a partial upper denture. In December 1978 Hernandez visited Dr. Pino complaining of loose bottom teeth. After an examination which included X-rays, Dr. Pino informed plaintiff that none of his teeth were good and that they should be extracted. In response to plaintiff's inquiry as to the necessity of extracting the upper teeth to which the partial denture was affixed, Dr. Pino gave assurances that even after the teeth were removed, the denture could be satisfactorily replaced. After the teeth were removed plaintiff experienced severe discomforts which included food leakage into the nasal canal while eating. Dr. Pino finally referred plaintiff to a Dr. Steven Holmes who performed two operations, one to seal the hole in the palate and another to reconstruct the jaw and gum using bone from plaintiff's hip. Another dentist, Dr. William Schiff, fitted plaintiff with new dentures which he says will continue to fall out frequently owing to the still existent deformities.
Plaintiffs filed suit against Dr. Pino and his insurer alleging negligent treatment, specifically that (1) the dentist's treatment fell below the requisite standard in extracting *452 all of plaintiff's teeth without a competent periodontal evaluation, and (2) the dentist failed to inform plaintiff that after removal of the teeth there could be difficulty in constructing dentures which would fit properly, that he would have to undergo corrective surgery with only a small chance of success, and that he would suffer an aggravation of a pre-existing speech impediment and difficulty in eating.
After commencement of the litigation, defendant's counsel released to plaintiffs' counsel a set of X-rays taken by Dr. Pino prior to the extractions. In exchange Dr. Pino was given "a hold harmless agreement." The X-rays had been examined by Dr. Schiff, the dentist who fitted plaintiff with new dentures. From the X-rays Dr. Schiff had measured the amount of bone available for the support of plaintiff's maxillary teeth as depicted on the X-rays, which information was preserved as notations in his treatment records. The record shows that Dr. Pino's attorney had also shown the X-rays to a dentist selected by the attorney, apparently in preparation for litigation, but that the attorney had not yet received an interpretation of the "anatomical structures depicted in the x-rays."
On September 24, 1981, plaintiffs hired a new attorney who sought unsuccessfully to obtain the X-rays from the first attorney and then requested that defendants produce the X-rays. Upon learning that the X-rays could not be located, defendants filed a motion to compel plaintiffs to produce them. When plaintiffs were unable to comply, the court imposed, as a sanction, that Dr. Pino's recollection of the matters would constitute established facts on the subject for purposes of the litigation, and further ruled that a more severe sanction would be imposed if it appeared from the deposition testimony of Dr. Schiff that his notations conflicted with Dr. Pino's recollections.
Three days later, and before the depositions of Dr. Holmes and Dr. Schiff were taken, the court heard argument on defendants' motion for summary judgment. In support of the motion, defendants filed only an affidavit of Dr. Pino, wherein he stated that, based on his clinical examination and X-rays, plaintiff's teeth needed to be extracted; no alternative method of treatment was available to salvage the teeth; his entire treatment of the patient was proper; and his extractions were performed in accordance with the generally accepted standard of care for general dentists.
In opposition to the motion, plaintiffs filed an affidavit of the surgeon, Dr. Steven Holmes, wherein he stated that he had examined the treatment records of Dr. Schiff, and was of the opinion that two or more of plaintiff's teeth may have been saved if treated periodontally; a thorough periodontal evaluation should have been performed; and the extraction of all remaining teeth without a competent periodontal evaluation represented a deviation from the requisite standard of care. The court excluded the affidavit.
The trial court ruled that "the x-rays are pivotal to this whole lawsuit, whether it be on the informed consent theory or otherwise," and entered summary judgment for the defendants.
Defendants rely mainly on DePuy, Inc. v. Eckes, 427 So.2d 306 (Fla. 3d DCA 1983) which is factually distinguishable. In DePuy a broken prosthesis was released to defendant, the distributor of the device, for testing by its expert with instructions that the fracture site of the device not be destroyed. After extensive testing of the prosthesis by defendant's expert, including an electron microscopic examination not previously performed by plaintiffs' own expert, the device was mailed back to defendant's own counsel with the fracture site part missing. At an evidentiary hearing plaintiffs' expert testified that he could not render an opinion without actual examination of the fracture site. As a sanction for misplacing the critical part of the prosthesis the trial court struck the defendant's answer to the complaint. We affirmed the holding that
Whether the prosthesis was destroyed in bad faith or accidentally is irrelevant in *453 the present case. The evidence is unavailable for the plaintiffs' use and they have demonstrated an inability to proceed without it.
427 So.2d at 308.
Ordinarily where a party in possession loses or destroys crucial record evidence a burden is imposed on that party to prove that the loss or destruction was not in bad faith. See § 90.954, Fla. Stat. (1983); Valcin v. Public Health Trust of Dade County, 473 So.2d 1297 (Fla. 3d DCA 1985). In this case plaintiff was given no opportunity to show that ordinary negligence rather than mischief was behind the disappearance of the X-rays; thus a summary judgment on that ground alone was premature. Assuming that the X-rays were not intentionally made unavailable, the next inquiry would be whether Dr. Pino will be unable to mount a defense without them.
In DePuy plaintiffs' counsel had not completed testing of the evidence before it was lost. In this case, Dr. Pino had given the X-rays to his own expert for examination before they were misplaced. There has been no showing by the defendant, and none is apparent from the record, that he is unable to defend against the claim for negligent treatment.
There was no basis for excluding the affidavit testimony of plaintiffs' expert witness which was submitted in opposition to the motion for summary judgment. Unlike DePuy, in this case there was other admissible evidence available to defendant. Defendant himself is an expert in the subject area out of which the action arises. He reviewed the X-rays, made notations, and drew conclusions upon which he based his decision to extract all of plaintiff's teeth. In preparation for the litigation defendant then gave the X-rays to his own expert for review. The record is silent as to the availability of defendant's expert witness.
Section 90.952, Florida Statutes (1983) states the general rule that:
Except as otherwise provided by statute, an original writing, recording, or photograph is required in order to prove the contents of the writing, recording, or photograph.
Defendants have presented no Florida authority, nor a persuasive argument, that the X-rays are, or should be, excepted from the best evidence rule on the facts of this case. Both parties direct us to the sponsors' note to section 90.952:
Although the admissibility of X-rays under the "best evidence" rule has apparently never been ruled on directly by Florida courts, the implication is that such materials would be admissible and an expert would be permitted to testify as to what they show, etc. [cites omitted]. Presumably, Florida follows the weight of authority in other jurisdictions requiring production of the original X-ray, if an expert is going to testify as to what the X-ray disclosed. Daniels v. Iowa City, 191 Iowa 811, 183 N.W. 415 (1921); Patrick & Tillman v. Matkins, [154 Okla. 232] 7 P.2d 414 (Okl. 1932). However, it should be noted that under § 90.704 the basis of an expert's testimony does not have to be admissible.
On the present state of the record, the question is answered by the best evidence rule, section 90.954, Florida Statutes (1983), which provides:

Admissibility of other evidence of contents. 
The original of a writing, recording, or photograph is not required ... and other evidence of its contents is admissible when:
(1) All originals are lost or destroyed, unless the proponent lost or destroyed them in bad faith.
* * * * * *
(3) An original was under the control of the party against whom offered at a time when he was put on notice by the pleadings or by written notice from the adverse party that the contents of such original would be subject to proof at the hearing, and such original is not produced at the hearing.
*454 We hold that in the absence of evidence that an X-ray was intentionally lost or destroyed, and where the party seeking to exclude the opponent's testimonial evidence as to the contents of the X-ray has had the X-ray examined by his own experts who are able to form and express opinions regarding its contents, the best evidence rule will apply to admit the expert testimony of both parties' experts.
Our determination on the first point also disposes of the question whether the inability of plaintiffs to produce the X-rays required dismissal of the claim based on lack of informed consent. That determination aside, we agree with plaintiffs that the X-rays were not critical to the informed consent claim. A patient can give an "informed" consent to a surgical procedure only where he is advised of, and understands the dangers and degrees of danger of, the procedure. Valcin, 473 So.2d at 1302. See also Dandashi v. Fine, 397 So.2d 442 (Fla. 3d DCA 1981). In neither the motion for summary judgment nor the single supporting affidavit did Dr. Pino address the allegations that he "failed to inform, advise, and warn" plaintiff of the risks reasonably to be expected from the proposed course of treatment. The X-rays are not critical to that issue. See DePuy, 427 So.2d at 308 (sanction of striking answer where defendant misplaced critical prosthesis was proper but striking of affirmative defenses was error where plaintiffs' ability to respond was not prejudiced). Therefore, it was error to dismiss the informed consent claim based on plaintiffs' inability to produce the X-rays.
Reversed and remanded for further proceedings.