## SOUTHERN DRILLING CO. et al. v. DALEY et al.

No. 24428.    Oct. 17, 1933.

Williams & Williams, for petitioners.

Leo J. Williams and M. J. Parmenter, for respondents.

SWINDALL, J. This is an original proceeding in this court to review an award of the State Industrial Commission entered on the 13th day of January, 1933, in favor of Chas. F. Daley, claimant, against the Southern Drilling Company employer, and United States Fidelity & Guaranty Company, insurance carrier.

Daley was injured on the 28th day of January, 1931. He was engaged as a helper in the drilling of an oil well and was "tightening leaky swivel with wrench when rotary kicked off under head of steam causing rotary table to rotate, throwing employee from table to floor and against manifold valve," striking his head. He was unconscious for a brief time, was taken to a hospital, and in three days returned to work. Fifteen days after his return he was laid off. Later he again tried to work, but suffered so from headache and dizziness that he could not. Compensation for temporary total disability was voluntarily paid, a claim for compensation filed, but no hearing had until January, 1932. At that time the employer and insurance carrier filed a motion with the Commission to discontinue temporary total disability compensation and to determine the extent of permanent partial disability, alleging that temporary total disability ceased on December 30, 1931.

On the January, 1932, hearing, three doctors, having observed and examined claimant, testified for the employer and its insurance carrier. One doctor testified for the claimant and he for himself. All of them recounted the symptoms plaintiff complained of, fairly expressed by Dr. Leroy Long, Jr., as follows:

"He was still complaining of subjective complaints such as headaches in the back of the head, stiffness in the left of the neck, spots in front of the left eye, slight discharge from both ears, dizziness on stooping over, weakness and fatigue and some disturbances in his memory."

And no one of them found any objective symptoms or physical derangements of note. There was a slight fracture of the skull, but no doctor expressed the opinion that it indicated serious results. Dr. M. S. Gregory, for claimant, found his neurological reactions somewhat more intense and serious and his mental state worse than did the other doctors. But all of them felt that his complaints were grounded in illness in fact whether objectively symptomized or not. The doctors were of the opinion that the greater part of his disability resulted from his mental attitude brought on by the injury, which could be improved by claimant's obtaining a job at light work. Employer's doctors were

of the opinion he would have ten to 15 per cent. permanent partial disability, claimant's that he would have 50 per cent.

Upon this record the Commission denied employer's and insurance carrier's motion and ordered that temporary total disability compensation be continued until further order of the Commission. Employer and insurance carrier paid such compensation until December, 1932, at which time they filed a motion again seeking discontinuance of such compensation. A hearing was held on this motion on the 9th day of January, 1933. The testimony of three doctors, all for employer, was taken, two of whom, Dr. Riley and Dr. Fishman, had testified at the hearing in January, 1932, and one of whom. Dr. Leroy Long, Sr., had not previously testified, but had claimant under his observation and care at intervals from April, 1931.

The claimant's complaints were the same as they were in December, 1931. There were still no objective symptoms. His general physical condition was improved over what it had been in 1931. Dr. Riley testified that he was still of the opinion that claimant could have returned to light work in December, 1931. That his former opinion that claimant would have 10 per cent. permanent partial disability had changed in the light of the lapse of time and of the fact that he had since seen the results of Dr. Long's lumbar puncture. He now held that claimant would have no permanent disability. Dr. Fishman testified that the longer claimant remains idle the more fixed his symptoms will become; that he was able and should have returned to work in December, 1931; that had he done so, his condition would now be normal; that if he will now begin light work with the proper mental attitude, his condition will be normal in a short time; and that should he do so he will have no permanent disability. Dr. Long, Sr., testified that at the time of his first examination of claimant in April, 1931, he did not find many objective symptoms, but his findings fitted in well with the complaints made and he thought claimant had a brain injury. He treated claimant for a few months. At the time of his last examination in December, 1932, he found no objective symptoms; claimant looked better, weighed more. That the disability results partly from the injury and partly from inactivity. That claimant should commence light work in a gradual way as a tentative undertaking, that it will not harm him, and if he does, he will probably be able to do ordinary manual labor within three months and not have any permanent disability, though it is possible he may have. That claimant's temporary total disability has ceased, and he now has about 50 per cent. temporary partial disability, which will probably disappear in three months if he works.

Following the hearing of these three witnesses, the attorney for employer and insurance carrier proposed that employer procure work for claimant of the character described; the attorney for claimant accepted the proposal; and the hearing was closed.

Thereafter, on January 13, 1933, the State Industrial Commission entered the award complained of, in which it found, among other things, that temporary total disability ceased on December 7, 1932, and as follows:

"That by reason of said accidental injury, claimant has sustained a permanent partial disability by reason of the injury to his head and skull on account of which his wage-earning capacity has been reduced from $5 per day to $2.40 per day, or a difference of $2.60 per day, making his rate of compensation $10 per week."

And ordered that compensation be paid in conformity with this finding from December 8, 1932, during the continuance of such permanent partial disability, not to exceed 300 weeks.

The employer and insurance carrier, petitioners herein, assert as grounds for vacating said award two propositions: (1) That the finding of the Commission that claimant has a permanent partial disability decreasing his wage-earning capacity from $5 per day to $2.40 per day, is not sustained by any competent evidence; and (2) that employee failed to avail himself of a reasonable remedial measure, and, therefore, the obligation of the employer to pay further compensation ceased.

Under the testimony adduced at the January 13, 1933, hearing, it is clear that there is not any competent evidence to support the finding of permanent partial disability. All of the expert witnesses were of the opinion that the disability was temporary, although Dr. Long, Sr., stated there was a possibility of its permanence. This injury was of a character requiring highly specialized knowledge to determine even its probable permanency. Dr. Long's statement was nothing more than an admission that he could not be certain in his judgment, it was not a qualification of his judgment. Where there is no evidence, opinion or otherwise, to show a disability permanent, there is nothing from which the Commission can find it perma-

nent, and it must be treated as temporary. Attorney for claimant concedes that there was no evidence of permanent disability produced at this hearing, but contends that Dr. Gregory's testimony given on the January, 1932, hearing was properly considered as evidence in making the present award. Dr. Gregory's testimony was, "I believe that he is totally disabled at the present time and that he will have remaining a large per cent. of total disability," somewhere around 50 per cent. Claimant theorizes somewhat as follows: Evidence given at a former hearing, since it is a part of the record, can be looked to for the purpose of determining claimant's physical condition as of that time. Noble Drilling Co. v. Link, 161 Okla. 238, 17 P. (2d) 971. Thus, if it were then permanent, it must be permanent now, and, therefore, evidence of its permanence then is evidence of its permanence now. This argument assumes that an injury thought to be permanent cannot later become temporary or wholly well, which is patently erroneous. An injury thought to be permanent can as well become temporary, or disappear, as an injury thought to be temporary can become permanent. This results from our inability to know at any given time, even with the help of experts, the exact nature and extent of an injury. It may be at the time we view it without question of a temporary character, yet have inherent in it the qualities of permanency, or though it appear permanent, it may contain elements leading to its cure. Of course, certain things appear with much more certitude than others but the principle remains. It is this broad principle that is so thoroughly recognized by the Workmen's Compensation Law in its change in conditions and continuing jurisdiction clauses. However, the law does and must act upon what appears at the time of its action to be fact, and in the present connection upon opinion. Hence, if it appears then that a condition is temporary, it is in law, and in fact in the ordinary sense of the term, temporary, although it may contain the germs of permanency and be so in reality. The same is true of any given condition. If at a later time the condition appears to be different, it is then, as before, in fact and in law what it appears to be as of the later time, the time we view it. Thus, the condition may now appear to be permanent instead of temporary. Assuming that we have not changed our opinion by reason of an oversight, but by reason of new factors appearing in the condition which could not have been known at the earlier time, we have a real change in conditions. And this is true

though at the same time we change our opinion of what the condition was formerly. That is, though we may now see that the condition contained elements of permanency, it has, none the less, changed from temporary to permanent. But, where we have changed our opinion by reason of an oversight, we do not have a change in conditions. Nothing in the condition has changed, no new factor has appeared in it, we have merely changed our opinion. The condition was not, in fact, even in the ordinary use of the term, what we said it was at the earlier time. We made a mistake. The Workmen's Compensation Law treats these two concepts in an entirely different manner. In short, it does not provide for the correction of mistakes in condition beyond the 30-day period of its absolute jurisdiction (Gypsy Oil Co. v. Roop, 148 Okla. 104, 299 P. 444; Oklahoma Pipe Line Co. v. Commission, 149 Okla. 162, 299 P. 180), but it allows adjusted compensation on the grounds of a change in conditions and authorizes the Commission on competent evidence to review any award, and, on such review, to make an award ending, diminishing, or increasing the compensation previously awarded, subject to the maximum or minimum provided in the act. Loffland Bros. Co. v. Velvin, 152 Okla. 83, 3 P. (2d) 855; Industrial Track Construction Co. v. Colthrop, 162 Okla. 274, 19 P. (2d) 1084. When the State Industrial Commission acts, on competent evidence, it is the arbiter of the condition as of that time. Views and opinions of the condition may differ, and it is the Commission's duty to weigh the facts and select therefrom. When it has done this, its adjudication, in the absence of review, is final, and it cannot thereafter change its findings so long as the same condition remains, nor in any event change them except in conformity with the changed condition. K. D. Oil Co. v. Datel, 145 Okla. 264, 292 P. 564; Summit Drilling Co. v. Graham, 156 Okla. 64, 9 P. (2d) 693; Hanna Lumber Co. v. Penrose, 154 Okla. 210, 7 P. (2d) 165; Noble Drilling Co. v. Link, supra. Litigants are required to be diligent, and it is presumed that qualified experts will know as much of the condition as can then be known. To hold otherwise would make the litigation uncertain and interminable. Thus it is that when we come to determine the question of a change in conditions, it is permissible to show by evidence that the condition is the same in the face of the Commission's adjudication of a certain condition and of the fact that we now find a different one. Noble Drilling Co. v. Link, supra. The purpose of such evidence

is to show that the condition should then have been proved. For this same reason we may look to the evidence which was produced to see if it was not then presented. The proposition to be established is that the condition now asserted has been adjudicated. Or, on the same ground, to show how much of it has been adjudicated. The fact that certain evidence was overlooked does not alter the situation; parties are required on their day in court to prove their case. This court, in Evans-Wallower Lead Co. v. Bayless, 154 Okla. 194, 7 P. (2d) 411, and Loffland Bros. Co. v. Velvin, supra, in the syllabus paragraph dealing with change in conditions, was very careful to say that an award could be reopened only when complications occurred after a hearing "which could not have been and were not determined in the first instance." But, when something new arises in the condition itself which changes opinion with regard thereto, then the present condition has not been, nor could it have been, adjudicated.

From the foregoing it is apparent that the evidence given in the present case at the first hearing, if passed upon by the Commission and rejected as insufficient to prove a permanent condition, is not competent evidence to prove such condition thereafter. On the other hand, if it be considered that the Commission adjudicated only the temporary condition and suspended its action on the permanent, as it may do under our law (Reinhart & Donovan v. Roberts, 157 Okla. 102, 11 P. (2d) 125), such evidence may then be given the same weight as evidence presented at a series of hearings preparatory to the making of an award. If, for example, the Commission immediately thereafter held further hearings as to the permanent condition, the testimony in that regard presented at the time the temporary disability was adjudicated could be considered in making the award for permanent disability. Yet, giving the testimony relied on in the case at bar such weight, it is plain that it has no material tendency to prove a condition of permanent partial disability at the present time. It appears that the experts who testified at the second hearing had changed their opinion as to the permanence of the injury because they had available two years time since the injury instead of one upon which to base their judgment, that such was important in the present case in estimating the permanence of the injury, and that certain results anticipated at the former hearing had not occurred. These new conditions render the former evidence without probative force at the present time. By "competent evidence" is meant that which the very nature of the thing to be proved requires as the fit and appropriate proof in the particular case. 2 Words & Phrases, First Series, p. 1360. We, therefore, hold, that there was no competent evidence to support the award for permanent partial disability. We further find no evidence in the record to support the finding of decreased earning capacity from $5 to $2.40 per day. Where there is no competent evidence to support the award made by the Commission, this court should and will vacate the same. H. W. & B. Drilling Co. v. Staton, 157 Okla. 152, 11 P. (2d) 469; Atlantic Oil Producing Co. v. Flannery, 157 Okla. 193, 11 P. (2d) 933.

Our conclusion on petitioners' first contention leads us to vacate the award in full, and for that reason his second contention becomes immaterial. Inasmuch as the matter argued in it was not raised before the Commission and evidence presented directly on the issue, we will not pass upon it in this opinion.

The award is vacated.

RILEY, C. J., and ANDREWS, McNEILL, OSBORN, BAYLESS, BUSBY, and WELCH, JJ., concur. CULLISON, V. C. J., absent.