## DOLLIVER v. LATHION.

No. 27515.  June 14, 1938.

Rehearing Denied Sept. 13, 1938.

Clayton B. Pierce and Truman B. Rucker, for plaintiff in error.

O. A. Cargill, W. R. Graalman, Howard K. Berry, and O. A. Cargill, Jr., for defendant in error.

GIBSON, J. The questions presented here for reversal of the judgment rendered in this case involving personal injuries relate

(1) To the sufficiency of the evidence to overthrow the release signed by the injured plaintiff; (2) the giving of an instruction covering certain features claimed not to be within the issues presented; (3) the refusal to give an instruction based on the effect of the release as governed by the principle of law announced in section 9434, O. S. 1931, 15 Okla. St. Ann. sec. 75; (4) the unwarranted injection into the case of the fact that defendant was protected by a liability insurance company.

The evidence of alleged fraud, while meagre and contradicted, was sufficient to go to the jury, and if believed, was sufficient to invalidate the release. The instruction complained of was based on evidence received without objection and does not present sufficient error to call for reversal. The jury allowed the defendant credit for the amount paid under the terms of the release, so the defendant has no cause for complaint on that account.

We think, however, that unnecessary and fatal error was committed in reference to the naming of the insurance carrier. Each side cites the case of Beatrice Creamery Co. v. Goldman, 175 Okla. 300, 52 P.2d 1033, and we apply that case to the record here.

In obtaining the release the agent for the insurance company issued two checks or drafts drawn on the insurance company. One of these checks was drawn in favor of the plaintiff, the other in favor of the plaintiff jointly with the doctor and hospital. The plaintiff claimed only one check was given him. The release recited, however, the receipt of $845, which was the total of the two checks. The checks might have been material here, if offered by the defendant to impeach the testimony of the plaintiff; but were not so offered. The plaintiff's reply, in effect, admitted the receipt of the money, and asked that what money was received should be credited on the amount which might be found due. The defense to the release and payment therefor was the alleged fraud. Clearly the checks were not material to this issue to prove any part of plaintiff's case.

The suggestion that an insurance company might be involved first appeared in plaintiff's testimony. He testified that a claim agent came to see him shortly after the accident, but qualified this statement by further saying he did not know who it was that came to see him. This, of course, is not sufficient reference to constitute prejudice.

But the further procedure had in the case produced the prejudice. After the witness Follens, who made the settlement, had testified about the circumstances surrounding the payment of the money and obtaining the release, counsel for plaintiff demanded that the checks be produced. The witness was permitted to testify without objection that one check for $360 was payable to Lathion alone, and that the other check for the balance was payable to Lathion, Lathion's doctor, and the hospital. The witness first testified that Mr. Pierce signed the checks, but upon being handed the checks by plaintiff's counsel testified that he was mistaken as to who signed the checks. It developed later that a secretary to Mr. Pierce actually signed the drafts. This witness, further, was asked by plaintiff's attorney if the checks to the hospital and Dr. Paul Haskett disclosed an absolute, final settlement, release, and discharge from all future bills of Lathion, and answered that there was nothing on the check to indicate that.

Plaintiff's counsel then offered the checks in evidence, but the offer was at that time rejected. Then followed what was obviously an attempt to get before the jury prejudicial matter. The witness was first asked if the defendant signed the check, if the defendant had the account upon which the check was drawn, and if Mr. Pierce or anyone in that office had an account in Oklahoma City upon which the check was drawn. Objections were properly sustained to these questions. It was immaterial to anything connected with the release as to who furnished the money therefor. Not content with those questions, counsel asked whether the check was drawn on Mr. Pierce's account. Objection here was sustained. So far the court had ruled correctly.

It will be noticed that all of the information contained in the checks had been placed before the jury without objection, except as to the name of the bank upon which drawn and the name of the insurance company, acceptor, together with the accompanying notations concerning the insurance policy. So that the only additional matters that could be shown would be the facts in reference to the insurance company's liability.

The persistence with which plaintiff's counsel continued to attempt to get the insurance feature before the jury finally resulted in success. Upon redirect examination of a witness called by plaintiff in rebuttal, after the witness had testified that he had deposited a check for the plaintiff, who said

be had made a settlement of the case, the following occurred: "Q. What did he (referring to Lathion) say about it?" Upon objection being made that this would be self-serving, the objection was overruled, but no answer given. Then this question was asked: "What did he say what the check was for?" An objection was made to this question, but it was not directly passed on, so plaintiff's counsel urged the witness to "Go ahead and state what he told you about it." This answer was elicited: "He told me it was a check, he had made a settlement with the insurance company."

Defendant immediately objected, asked that the answer be stricken, and that the jury be instructed not to consider it, and further moved that a mistrial be declared by reason of the prejudicial testimony which had come out "not in answer to our questions."

Before passing upon this motion the court, over objection, reversed his ruling as to the check payable to the hospital, doctor, and plaintiff, and allowed it to be read to the jury. Then the court overruled the motion, stating: "However, the jury will be instructed to disregard his statement and give it no consideration whatsoever." Lathion was then asked to identify his signature on the back of the check. He stated he couldn't see, so his counsel admitted it was plaintiff's signature. Defendant renewed his motion for mistrial because of the prejudicial evidence regarding the insurance company. The motion was denied, with exceptions allowed.

We are unable to see any rational theory upon which the check was admitted in evidence. The reasons advanced by defendant in error here are the flimsiest. It is said:

"Plaintiff's purpose in introducing this check was to substantiate the testimony that defendant's agent had represented to plaintiff that he was giving him an amount that would pay his doctor and hospital bills in full. The check, of course, does not show that the account which it represents was paid in full."

We agree with counsel for Lathion when they state that the Beatrice Creamery Co Case, supra, states the correct rule:

"If' the insurance feature is brought into the case not merely to show the fact of its existence but is disclosed as a necessary incident to proof of a material part of plaintiff's case, such reference thereto does not constitute improper conduct on the part of counsel and is not sufficient cause for reversal."

We are unable to see how this check fulfilled either of the requisites required, i. e., was "a necessary incident" or was upon "a material part of plaintiff's case." We fail to find where defendant at any time claimed that this check on its face showed payment in full; on the contrary, the court elicited from the defendant's witness that the check did not so show and the defendant in no wise challenged this statement. Further proof on this point was both unnecessary and immaterial.

But it is further claimed that the check was admissible to impeach the testimony of the witness Follens as to who signed the check. If that point in itself would be material, still the introduction of the check was neither necessary nor material to prove it, for Follens, while on the stand, was shown the check and admitted that he had erred in saying that Mr. Pierce signed it, and that it was in fact signed by the secretary of Mr. Pierce. This proved all that the check could have proved.

It is further asserted that the evidence came from the witness inadvertently and that previous proper and substantial evidence had injected the insurance feature into the case. Counsel, however, neglect to point out any such previous proper and substantial evidence, and we have been compelled to search the entire record therefor. We fail to find it. Certainly, also the check was not injected into the record by inadvertence. Counsel offered it.

We find no instruction to the jury to disregard the testimony, although the court said: "The jury will be instructed to disregard his statement." We cannot tell from the record whether the court meant this language to be a present instruction to that effect, or merely an intention to cover the matter later. This might properly be determined by the manner in which the statement was made. But the statement did not cover the check. Furthermore, this is such error as could not be cured by an instruction.

"When the insurance feature is improperly brought to the attention of the jury, the prejudicial effect thereof is immediate. Whether innocently or designedly accomplished, if plaintiff or his counsel is responsible therefor, the rights of defendant have been prejudicially affected, and the court's instruction to the jury to disregard the same will not cure the damage already done. This must be so if we are to recognize the general rule." Hankins v. Hall, 176 Okla. 79, 54 P.2d 609.

332

For the reasons assigned, the case is reversed for a new trial.

BAYLESS, V. C. J., and RILEY, CORN, and HURST, JJ., concur.