Dick PRATT, J. B. Pratt and W. B. Pratt, d/b/a Pratt Grocery Company, Plaintiffs in Error,

v.

Myrtle WOMACK, Defendant in Error.

No. 38910.

Supreme Court of Oklahoma.

Jan. 24, 1961.

Butler, Rinehart & Morrison, Oklahoma City, Wilson Wallace, Ardmore, for plaintiffs in error.

J. W. Dixon, Marietta, Looney, Watts, Looney & Nichols, Oklahoma City, for defendant in error.

JACKSON, Justice.

Defendants appeal from judgment on verdict for plaintiff in the amount of $5,-000 as and for damages for alleged bodily injuries caused by a stack of canned goods in defendants' grocery store falling on plaintiff's foot.

Defendants first contend, in Proposition I, that there was no evidence of negligence on the part of defendants, in that there was no testimony that defendants "stacked

canned goods extremely high, at approximately six or seven feet, and in an awkward and crooked manner," as alleged in the petition. In this connection, it is argued that the cans could have been properly stacked and that a customer for example, could have caused them to become misaligned immediately prior to plaintiff's injury.

We think that the cases cited by defendants, although supporting the rule that there must be sufficient evidence of negligence to warrant submitting the issue to the jury, are distinguishable on the facts. In Whitehead v. Erle P. Halliburton, Inc., 190 Okl. 120, 121 P.2d 581, plaintiff slipped on a stairway, and afterward observed some strips of waste paper thereon, but there was no showing that defendant knew or should have known of its presence. In Tweed v. First National Building Corporation, 203 Okl. 31, 218 P.2d 356, there was no proof that the foreign substance on the stairs caused plaintiff's fall, or that plaintiff fell at that particular place. In Owen v. Kitterman, 178 Okl. 483, 62 P.2d 1193, we affirmed judgment for plaintiff, holding that there was sufficient evidence that defendant's employees had created an unsafe condition causing plaintiff to slip and fall on the floor.

In M & P Stores, Inc. v. Taylor, Okl., 326 P.2d 804, 805, we said, in the first paragraph of the syllabus:

"Although the storekeeper is not an insurer of the safety of his customer while in the store, he does owe the customer the duty of maintaining the premises, such as the aisles and other portions thereof usually used by the customer, in a reasonably safe condition for such use, and to warn such customer of the dangerous conditions existing in the areas so used, said invitee having the right to assume that it is safe to walk in the aisles near the counters for the purpose of making a selection of that which he or she intends to buy."

See also, Great Atlantic & Pacific Tea Co. v. Mullen, Okl., 301 P.2d 217.

In the instant case, plaintiff testified that at the time of the occurrence, canned goods were stacked irregularly on the shelves higher than she could reach and were leaning in several different places in the store and that they had been so stacked on previous occasions.

In Covington Coal Products Co. et al. v. Stogner, 181 Okl. 35, 72 P.2d 491, 492, we said:

"In a civil action for damages for personal injuries all the plaintiff is required to do in order to establish his case is to make it appear to be more probable that the injury came in whole or in part from the defendant's negligence than from any other cause, and this fact may be established by circumstantial evidence and the reasonable inferences that may be drawn therefrom."

We hold that there is sufficient evidence to make a prima facie case, on the theory that the cans were probably stacked by defendants' employees and/or that defendants knew or should have known of the condition for a sufficient length of time to have remedied same. J. C. Penney Co. v. Campbell, Okl., 325 P.2d 1056.

In defendants' Proposition 3, it is contended that there was insufficient evidence that plaintiff's injury was permanent to warrant submitting that element of damages to the jury.

Plaintiff testified that after first consulting Dr. M., in Marietta, Oklahoma, who treated and taped her foot, she went to a specialist at Ardmore, Dr. D.; that she was treated by him for two or three months, which treatment consisted of whirlpool treatments, massage, hot and cold applications, and taping and immobilization of the foot; that Dr. D. advised her to get crutches, and prescribed an inlay type of shoe for plaintiff to wear "from hereon", which plaintiff was wearing at the time of trial.

Dr. M., an osteopath, testified that when he examined plaintiff's foot on September 28, 1957, it was quite edematous, swollen

and discolored. Examination indicated that her foot was quite tender over the arch, both on the anterior surface and on deep palpation on the sole of the foot, and plaintiff flinched quite noticeably during the examination. He applied supportive bandages and advised her to continue hot applications. He saw her about five times before referring her to Dr. D. and noticed no improvement in her condition.

Although Dr. D. had not examined plaintiff for a period of about a year and a half prior to trial, his findings at his last examination, on October 15, 1957, were, in part, as follows:

"The exact area of pain to be located around the cuboid and the second and third cuneiform bones, right foot. There was a mild edema on the lateral side of the foot. The foot motion disclosed a restricted dorsiflexion and plantar-flexion. In the standing position the right foot showed a definite limited dorsiflexion. Those were my physical findings. The x-ray examination * * * indicated no fracture of the bones in the right foot. There was a periosteitis of the cuboid and the second and third cuneiform bones with a rotation of the bucoid bone. The entire foot showed the pronation syndrome.

\* \* \* \* \* \*

"It will be necessary for the patient to continue wearing her orthopedic inlays and her orthopedic shoes to maintain the proper function of her foot."

On direct examination, he testified?

"Q. Is that a permanent condition? A. It was at that time."

In the only case cited by defendants in support of this proposition, Griffin v. Asbury, 196 Okl. 484, 165 P.2d 822, the injuries were purely subjective, plaintiff having swallowed several pieces of broken glass. The rule stated therein was that where the injuries were purely subjective and there was nothing from which it could be determined objectively that the injuries were permanent, expert testimony was essential on the question of permanency of such injuries. In that case we held that medical testimony that plaintiff's injuries would likely be permanent was sufficient to support an instruction on permanent injury.

In the instant case, plaintiff's injuries were not purely subjective. At the time of trial, more than eighteen months after the injury, plaintiff was still wearing special orthopedic shoes prescribed by Doctor D. as necessary to maintain the proper function of her foot "from hereon."

We have held that there is no presumption that temporary disability will continue, and that evidence that a claimant in workman's compensation proceeding was temporarily disabled as of a given date would not support an award for temporary total disability made ten months later covering the intervening period. Ross v. Ross, 184 Okl. 626, 89 P.2d 338; Smith v. Zweifel, 176 Okl. 113, 54 P.2d 649.

On the other hand, we have affirmed awards for *permanent* disability based on medical evidence as of a date several months prior to date of trial. Luper Transportation Co. v. Bramlett, Okl., 282 P.2d 732. In Phillips Petroleum Co. v. Malcolm, 175 Okl. 512, 53 P.2d 1113, 1114, we said:

"Hearings by the Industrial Commission often consume five or six months and are continued from time to time for further hearings in different parts of the state where the evidence may be reached more conveniently.

"To announce the principle urged by petitioner would result in a situation wherein the commission would either be bound by the testimony taken at the last hearing, or would require a repetition of all the testimony previously taken at every hearing."

In the instant case, no medical evidence was offered by defendant, and we find no indication in the evidence that plaintiff's condition had undergone any substantial change since the date of Dr. D.'s last ex-

amination, about a year and a half prior to trial. See Southern Drilling Co. v. Daley, 166 Okl. 33, 25 P.2d 1082.

■■ We therefore hold that Dr. D.'s opinion that plaintiff's injuries were permanent at the time of his last examination was sufficient to warrant submission of the issue of permanency to the jury. In the absence of evidence of a substantial change in condition, there is a presumption that a permanent condition will continue indefinitely.

■ Defendant next contends, in Proposition Four, that there was no evidence to support the allegation of medical expenses in the amount of $550, and that therefore the court erred in submitting that element of damages to the jury.

We agree with this contention. The record being devoid of any evidence to support that allegation, the court should have reduced the allowable amount of damages submitted to the jury by the amount claimed for that item.

In view of our final disposition of this case, however, requiring a remittitur by plaintiff, such error was harmless. Kurn v. Manley, 194 Okl. 574, 153 P.2d 623; 12 O.S.1951 § 78.

■ Defendants' final contention, in Proposition 2, is that the trial court should have granted a mistrial because of the injection of insurance into the case, which occurred during the testimony of plaintiff's husband, Mont Womack, as follows:

"Q. What was your conversation with the manager three or four days afterwards? A. We were just talking about the foot being so sore, and that he had better see about it, see into it, you know. *I was very sure that they carried compensation.*"

Defense counsel immediately moved the trial court to declare a mistrial, which motion was overruled, and the jury was admonished to disregard the statement.

Plaintiff argues that the error, if any, was harmless, citing M & P Stores, Inc. v. Taylor, Okl., 326 P.2d 804. In that case, one of *defendant's* witnesses stated that he was contacted by "a man from the insurance company." The *defendant* moved for a mistrial, which the trial court denied, and declined to have the trial court admonish the jury to disregard the statement. At page 808 of the opinion, we said:

"Where the statement was voluntarily made by *defendant's* witness in answer to a proper question on cross-examination, with no further allusion thereto, we hold that the court's refusal to grant a mistrial was proper." (Emphasis added.)

In the instant case, the suggestion that defendants were covered by liability insurance emanated from one of plaintiff's witnesses, which renders our holding in M & P Stores, Inc. v. Taylor, supra, inapplicable.

Plaintiff also argues that the statement was barely audible and could barely be heard, and that the court admonished the jury to disregard same. We are unable to determine definitely from the record whether the jury heard the statement or not. The trial court evidently believed they might have heard it, otherwise he would not have deemed it necessary to admonish them to disregard it. We decline to assume that the statement was not heard by the jury.

We have held that such an admonition will not cure the prejudice. Dolliver v. Lathion, 183 Okl. 329, 82 P.2d 675.

■ In Redman v. McDaniel, Okl., 333 P.2d 500, we held that prejudice results as a matter of law when it is made to appear that defendant is covered by liability insurance. At page 503 of the opinion, we said:

"In some of our former decisions where plaintiffs informed the jury that defendants were protected by insurance, we refused to reverse the trial court because we could not say that a new trial would result in a different finding, or result in a smaller verdict. Stated another way, we refused to reverse because we were unable to say

228

that the improper conduct had any prejudicial influence upon the jury. These decisions are not realistic. They are in conflict with the view that prejudice results when the jury knows that an insurance company will have to pay the judgment. It permits a plaintiff to deliberately inject beneficial prejudice into the case which experience has demonstrated will usually be reflected in a larger recovery. It permits a plaintiff to retain that larger recovery for the simple reason that it is difficult, if not impossible, for this court to segregate and identify the harm done. This type of decision encourages improper conduct.

"Since we are of the view that knowledge of insurance coverage will cause a jury to render a larger verdict, and in some cases render a verdict in favor of the plaintiff when otherwise they would not, it becomes the duty of this court to compensate for the harm done by appropriate action. In some cases this may be done by directing a remittitur. In other cases it may be necessary to grant a new trial."

The action taken by this court will depend upon the facts and circumstances of each particular case.

In Ruth v. Reeves, Okl., 340 P.2d 452, where plaintiff's counsel on voir dire asked the jurors collectively whether they or their spouses carried automobile liability insurance, and no further mention of insurance occurred during the trial, we affirmed the judgment for plaintiff on condition of a remittitur. We think our holding in that case is applicable to the instant case.

In view of the errors noted herein, we think justice requires a remittitur of $1,500. The judgment is therefore affirmed, upon condition that plaintiff file a remittitur of $1,500 in the trial court within ten days from the issuance of mandate herein, failing which the judgment is reversed, with directions to grant defendants a new trial.