Chester SMITH and L. J. Smith, Plaintiffs in Error,

v.

Erwin HANEWINCKEL, Administrator of the Estate of Lula Hanewinckel, Deceased, Defendant in Error.

No. 40676.

Supreme Court of Oklahoma.

July 6, 1965.

V. P. Crowe, Paul R. McDaniel, Andrew M. Coats, Crowe, Boxley, Dunlevy, Thweatt, Swinford & Johnson, Oklahoma City, for plaintiffs in error.

Cargill, Cargill, Chiaf, Rudkin & Cargill, by John Chiaf, Oklahoma City, for defendant in error.

IRWIN, Justice.

Erwin Hanewinckel, Administrator of the Estate of Lulu Hanewinckel, deceased, commenced proceedings to recover damages for personal injuries, medical and funeral expenses and wrongful death of decedent, against Chester Smith and his wife, L. J. Smith. Plaintiff is the surviving husband of decedent and the father of defendant L. J. Smith, and the father-in-law of defendant Chester Smith. The accidental injury forming the basis for the action was allegedly sustained while decedent was visiting in defendants' home.

The jury returned a verdict in favor of the Administrator and judgment was rendered thereon. Defendants' motion for judgment notwithstanding the verdict and motion for a new trial were overruled and they have perfected the present appeal.

## CONTENTIONS

Defendants contend the trial court erred as a matter of law in overruling their motion for a mistrial and for a continuance where the misconduct of plaintiff's attorney brought to the attention of the jury the fact that defendants were protected by liability insurance.

Plaintiff states that "with the introduction to the public of the homeowners policy, the carrying of liability insurance at home has been a practice. It is ethereal thinking to believe that the ordinary person serving upon a jury does not know this; such thinking is not tenable under present day conditions." Plaintiff argues that the matters and things of which defendants seem to be concerned, primarily took place before a jury that did not try the case and that there is nothing in the record that even by inference suggests that the jury trying the case had information that defendants were covered by liability insurance.

## FACTS

The record discloses three jury panels were called. The first two panels were discharged after the trial court sustained defendants' motions to declare mistrials. A

third jury panel was called; the jury was qualified; and the cause was submitted to it.

The reporter did not record the voir dire examination of the first jury panel that was discharged. However, the record does contain the testimony of attorneys who testified concerning the events which formed the basis for defendants' motion to declare a mistrial. Defendants' attorney testified that plaintiff's attorney displayed an insurance policy to the jury and on voir dire examination asked the prospective jurors if they owned stock in any company; and that if they gave an affirmative answer, the next question, without any preliminary questions was; "do you own stock in the Farmers Home Mutual Insurance Company?" Plaintiff's attorney admitted he had the insurance policy with him but denied that the same was ever in view of the jury or that he ever displayed the same to the jury panel. The trial court was of the view that defendants had established a right to a mistrial, sustained defendants' motion for a mistrial, and discharged the first jury panel.

During the voir dire examination of the second jury panel defendants moved for a mistrial "on the ground that the question propounded by counsel for the plaintiff and the answer given by the juror, so prejudices the rights of the defendants that they could not be granted a fair and impartial trial by injecting the question of liability insurance * * *." The trial court sustained defendants' motion and declared a mistrial and discharged the jury panel.

After the trial court had declared a mistrial and discharged the second jury panel, defendants moved for a continuance and asked that the cause be stricken from the jury term. The trial court overruled this motion and the third jury panel was called.

In the voir dire examination of the third jury panel, plaintiff's counsel stated, "* * * as far as Mr. Hanewinckel's daughter and son-in-law here, there is no animosity here, * * *." Defendants' counsel did not object to this statement. Plaintiff's counsel pointed out that the action was by a father against his daughter and son-in-law for injuries and resulting death of defendant daughter's mother and then asked if the jurors would have any prejudice in bringing such action and stated:

"Now, this is a legal—in other words for us legally to recover, this is the procedure that we have to go through and you would have to go through."

The trial court sustained an objection to the form of the question. One of the jurors was excused when he stated he would not go through the legal proceedings.

On further voir dire of the jury, plaintiff's counsel stated: "Now, maybe it would help to let you know there is no animosity between either side, you understand that, * * *." No objections were made to this statement. After another juror was excused when he stated he would not bring such an action, another prospective juror was called and plaintiff's counsel again advised the jury that, "Now, you understand that these people are friendly here. * * *." a prospective juror answered "yes" and plaintiff's counsel stated, "Nobody is mad * * *."

Plaintiff's counsel asked the jury panel if they knew any of the lawyers and then stated: "Now Mr. M * * * represents the Smiths personally. Do you know him?" Defendants' counsel moved for a mistrial and stated: "This is so gross that it is obvious now. Mr. M * * * is representing the persons and I represent something else. He had repeatedly informed them that this is a friendly suit and then this statement. He has been doing it all day; the court should order a mistrial and strike it from the docket." The motion was overruled and the trial court admonished plaintiff's counsel "* * * to refrain from further reference to the fact that there is no animosity between the parties."

Prospective juror Mrs. B was asked if she owned any stock in any corporation. She answered "yes" and was rather hesitant about stating the type of stock. On

further examination she stated she owned automotive, steel, oil and utility stock, and plaintiff's counsel stated, "* * * I move to ask this juror—he is quite upset—I move to ask her whether she owns any stock in any mutual insurance company or any interest." The trial court overruled the motion and asked Mrs. B if she had named all the various types of stock she owned and she answered, "As far as I can think of now." The trial court thanked her and plaintiff's counsel then stated, "I want to move, if the Court please, to be able to ask the question. As far as she—she answered, as far as she can think of, of whether she owns any stock in any mutual insurance company or any interest thereof." This motion was overruled.

On the voir dire examination of Mrs. C, who was engaged in the insurance business, she was asked if she would bring an action against her own daughter and son-in-law in order to procure a judgment. She answered, "I would if—". Plaintiff's counsel advised her she should answer the question, "yes" or "no", and she replied, "For a given set of circumstances, yes". The record shows the jurors laughed. Plaintiff's counsel inquired, "* * * let's say under these circumstances." Defendants' counsel moved for a mistrial and stated, "* * * It is obvious, being an insurance agent what she was referring to. The rest of the jury, with their reaction showed they knew too." Defendants' motion for a mistrial was overruled.

On further voir dire examintion of the jury panel, plaintiff's counsel again stated: "You understand there is no animosity between the two of them, you understand that?" Defendants' counsel called the court's attention to the fact that it had specifically instructed plaintiff's counsel not to make that remark again and moved for a mistrial. This motion was overruled and the trial court admonished the jury.

## CONCLUSION

Ordinarily, when an action is brought to recover damages for personal injuries, funeral and medical expenses, and wrongful death, the parties are not friendly and some animosity exists. However, on three different occasions plaintiff's counsel stated to the jury panel in his voir dire examination, "there is no animosity here", "these people are friendly", and "nobody is mad". Although an objection was made and plaintiff's counsel was admonished by the trial court to refrain from making such statements, plaintiff's counsel again stated, "You understand there is no animosity between the two of them, you understand that?"

Plaintiff does not discuss in his brief the propriety of such remarks or state the purpose thereof, nor why he advised the jury "there is no animosity" after he had been admonished by the trial court to refrain from making such statement. In our opinion, such statements, when considered in connection with the hypothetical questions presented, in effect, informed the jury that this was a friendly action and was brought only "in order to obtain a judgment."

On the voir dire examination of Mrs. B, who had stated the type of stock she owned, plaintiff's counsel on two occasions pressed his motion that he was entitled to ask her if she owned any stock or interest in any mutual insurance company. In examining and analyzing the voir examination of Mrs. B, and her responses, we can find no valid reason why plaintiff's counsel would be entitled to inquire as to Mrs. B's interest in a mutual insurance company. The trial court was of this same view and overruled plaintiff's counsel's motion, but the jury was effectually advised that plaintiff's counsel wanted to know if she did have an interest in any mutual insurance company.

In the voir dire examination of Mrs. C, who was engaged in the insurance business, Mrs. C, in response to a question as to whether she would bring an action against her own daughter and son-in-law to procure a judgment, stated: "For a given set of circumstances, yes". Although the answer was not responsive to the question presented, the answer did provoke a laugh from the jurors. Mrs. C, did answer "yes"

to the following question presented by plaintiff's counsel, "Now, ma'am, please forget about any set of circumstances or anything else like that. If, in order to procure a judgment you had to bring an action, would you bring that action?"

Without question, some prospective juror might be prejudiced against a father who would seek damages against his own daughter and son-in-law for injuries sustained and resulting death where the alleged accidental injury forming the basis for the action was sustained while the father and mother were visiting in their daughter's and son-in-law's home. Plaintiff's counsel could properly examine the prospective jurors to determine this fact. However, the fact that a father does institute proceedings against his own daughter and son-in-law, to recover damages for injuries, medical and funeral expenses and wrongful death, should not relax the rule against reference to liability insurance.

 In analyzing the entire proceedings for the empaneling of the jury which returned the verdict herein, we can only conclude that plaintiff's counsel effectually informed the jury that this was a friendly action between the parties and no animosity existed, and was brought only in order to obtain a judgment and that defendants were protected against judgment by liability insurance, whether the same was accomplished inadvertently or intentionally.

In M & P Stores, Inc., v. Taylor, Okl., 326 P.2d 804, we said:

"The rule generally applied in this jurisdiction is that ordinarily any reference that injects the insurance feature, whether accomplished innocently or by design, by statement of counsel or irrelevant testimony on behalf of plaintiff, if plaintiff or his counsel is responsible therefor, is improper and prejudicial to the rights of the defendant and failure to declare a mistrial upon timely motion constitutes reversible error; and an instruction to the jury to disregard the same will not cure the damage done. Dolliver v.

Lathion, 183 Okl. 329, 82 P.2d 675; Hankins v. Hall, 176 Okl. 79, 54 P.2d 609; Beatrice Creamery Co. v. Goldman, 175 Okl. 300, 52 P.2d 1033; Bratten v. White, 181 Okl. 543, 75 P.2d 474.

"It will be noted that in each of those cases testimony injecting insurance into the case comes from the plaintiff, the plaintiff's attorney or one of the plaintiff's witnesses.

"We have further held that whether or not testimony is prejudicial and effectually informs the jury that defendant is protected against a judgment by insurance, depends essentially upon the facts and circumstances of each case. Fixico v. Harmon, 180 Okl. 412, 70 P.2d 114; Westgate Oil Co. v. McAbee, 181 Okl. 487, 74 P.2d 1150; Coker v. Moose, 180 Okl. 234, 68 P.2d 504; see also annotation 4 A.L.R.2d 819."

In Pratt v. Womack, Okl., 359 P.2d 223, we held:

"Generally, any suggestion by plaintiff, plaintiff's counsel or any of plaintiff's witnesses that defendant is covered by liability insurance, whether accomplished inadvertently or intentionally, is improper and prejudicial to defendant, and an admonition to the jury to disregard same will not necessarily cure the prejudice."

In Redman v. McDaniel, Okl., 333 P.2d 500, we said:

"Have the defendants been prejudiced if the jury had good reason to believe that the defendants are protected by insurance? In 4 A.L.R.2d at page 793 under the annotation 'Showing as to Liability Insurance', the author states:

" 'Experience has demonstrated that whenever jurors know that an insurance company will have to pay any judgment entered on their verdict, such knowledge will usually be reflected in a larger recovery.'

"We hold that view.

"In some of our former decisions where plaintiffs informed the jury that defendants were protected by insurance, we refused to reverse the trial court because we could not say that a new trial would result in a different finding, or result in a smaller verdict. Stated another way, we refused to reverse because we were unable to say that the improper conduct had any prejudicial influence upon the jury. These decisions are not realistic. They are in conflict with the view that prejudice results when the jury knows that an insurance company will have to pay the judgment. It permits a plaintiff to deliberately inject beneficial prejudice into the case which experience has demonstrated will usually be reflected in a larger recovery. It permits a plaintiff to retain that larger recovery for the simple reason that it is difficult, if not impossible, for this court to segregate and identify the harm done. This type of decision encourages improper conduct.

"Since we are of the view that knowledge of insurance coverage will cause a jury to render a larger verdict and in some cases render a verdict in favor of the plaintiff when otherwise they would not, it becomes the duty of this court to compensate for the harm done by appropriate action. In some cases this may be done by directing a remittitur. In other cases it may be necessary to grant a new trial."

Since we have heretofore determined that plaintiff's counsel effectually informed the jury that defendants were protected by liability insurance, defendants are entitled to appropriate relief. Under the facts and circumstances herein, we have concluded that the judgment of the trial court should be, and is, reversed with directions to grant to defendants a new trial.

Judgment reversed with directions to grant defendants a new trial.