The **OKLAHOMA PUBLISHING COM-PANY, Inc., Plaintiff in Error,**

v.

**Macky Lou AUTRY, Defendant in Error.**

**No. 42021.**

Supreme Court of Oklahoma.

Dec. 23, 1969.

Watts, Looney, Nichols & Johnson, Oklahoma City, for plaintiff in error.

Ed. Dudley, Joseph O. Minter, Madill, for defendant in error.

BLACKBIRD, Justice.

In the present action, defendant in error, hereinafter referred to as "plaintiff", recovered a judgment in accord with a verdict against plaintiff in error, hereinafter referred to as "the Publisher" and/or "defendant", for damages on account of personal injuries she suffered when she fell to the floor in Golden's Cafe at Kingston.

Besides said defendant, Jack Price, d/b/a Golden's Cafe, was also a defendant in the case, but, when it came to trial, he was in default, and did not appear, even as a witness. The cause was submitted to the jury as if Price had never been a party to it, although plaintiff's petition alleged that her fall was caused by her foot becoming entangled with one of the legs of a newspaper rack protruding into the "isle or usual walkway" of the Cafe, and that *both* of said defendants were negligent in permitting it "to be in such a dangerous place" on said Cafe's premises.

In its answer, the Publisher defendant denied that the newspaper vending rack was owned, controlled, or operated by it, and alleged, among other defenses, that the rack was "open and obvious to the plaintiff and that had she exercised and used the normal faculties of sight, hearing and perception she would have not fallen, * * *".

At the trial, the court overruled the Publisher's motion for a directed verdict (as well as its demurrer to plaintiff's evidence); and, in its present appeal, said defendant takes the position that this was error for the reason, among others, that the evidence was insufficient to show that it—rather than Jack Price, owner and operator of the Cafe—was responsible for (or controlled) the newspaper rack's location in the Cafe.

At the outset, it should be made clear that plaintiff never contended that the newspaper rack was structurally defective, but based her entire cause of action on the claimed dangerous location of the rack on

the premises, claiming, in effect, that it was situated at a place where it should have been foreseen that it would constitute an obstruction and a hazard to the safety of a member of the public, who, as a customer, or business invitee, of the Cafe, started to walk by it to be seated in the Cafe and be served food and drink, as she was doing when her progress to one of the Cafe's booths was interrupted by her fall.

Also, it was never claimed that the Publisher had anything to do with the operation of the Cafe, or that it shared, with Mr. Price, the Cafe's owner and/or operator, or any of his agents or employees, any profit from the sale of said Publisher's newspapers, which, with the rack as a container and displayer, were made available (as far as the record shows) to the Cafe's customers—and perhaps to other members of the public—purely as an accomodation and gratuity, and did not otherwise concern the Cafe, or its business.

There was no conflict in the evidence on the question of whether the Publisher, or the Cafe's management or staff, was responsible for the newspaper rack being in the particular location in which it stood, not far inside the Cafe's front door and near its cash register, and in, or bordering upon, a walkway leading to the Cafe's booths.

According to the Publisher's district manager, Mr. Abrams, and its local distributor, Mr. Fenner, both of whom testified as witnesses for said defendant, the newspapers (for whose display and sale racks were used) were purchased from said defendant by Fenner at wholesale and sold at retail; that, in the several communities in which Fenner distributed the newspapers, Abrams did not designate the places, or business establishments, at which the papers were to be offered for sale, or sold, but left that to Fenner, who made all arrangements for the setting up of the racks, for that purpose, with those operating such establishments. Although both of these defense witnesses testified that said

defendant had circulation requirements and expected the area, Fenner's distribution served, to be adequately covered, and it could terminate his distributorship anytime he did not meet such requirements, Abrams testified that the distributor did not "actually supervise the position" of such racks in cafes and stores in which they were set up; and, when asked who chose the location of the subject rack in Golden's Cafe, Fenner testified that it was said Cafe's proprietor, and that the proprietor placed the rack "where he wanted it."

Plaintiff, who, on the day of her fall, was employed as a waitress in another of Kingston's eating establishments, and testified that, during an unidentified period previously, she had also worked a short time as a waitress at Golden's Cafe, also testified, in substance, that on all of the occasions previous to the accident, that she had been in Golden's, the subject newspaper rack was standing on the left (near the cigarette vending machine), rather than on the right, near the cash register, as it was at the time of her fall. Plaintiff's testimony that, after she fell, and was helped up off the floor by certain of the Cafe's customers, the newspaper rack was placed back in its usual location, and her eldest daughter's testimony that, after the fall, she saw the Cafe's operator, Mr. Price, pick up the newspaper rack, might be regarded as supporting defendant's evidence that Mr. Price, rather than it, or any of its agents or employees, selected the site of the newspaper rack, though defendant's witness, Mrs. Splawn, a waitress on duty at Golden's when the accident occurred, denied that the rack was moved to a different location immediately after the accident, and further testified that, as long as she worked there, the newspaper rack was always in the same location. This latter witness also testified that, whenever she mopped the Cafe's floor, she moved the rack so she could clean under it, but that, after the mopping, she always placed it back in its former location. On cross-

examination, plaintiff's counsel elicited the following testimony from this witness:

"Q. One other thing you also told us was that these newspaper people brought in and they placed the racks where they'd sell the most newspapers, didn't you?

A. If it suited the owner. * * *"

In his testimony, Fenner stated that his son helped him deliver the newspapers sometimes, and that he could not remember whether it was he, or his son, who placed them in the subject rack the morning of plaintiff's fall, but he further testified that "this rack was always in the same place." A later excerpt from this witness' testimony is as follows:

"Q. When you would put the newspapers in the rack, did you ever find it in any other location?

A. Not prior to that time. Later on, another proprietor did place it in another place.

\*     \*     \*     \*     \*     \*

CROSS-EXAMINATION

BY MR. DUDLEY:

Q. Mr. Fenner, you say you don't know for sure whether you put the papers in there on * * * (the date of plaintiff's injury) * * * or not. Is that correct?

A. No, sir; it would either be myself or my son.

Q. If it were your son, then he could have put that rack out there by the cigarette machine and put papers in there, could he not?

A. No, sir. He never moved the racks.

Q. You don't know, Mr. Fenner, you weren't there.

A. I didn't see it, but he had been instructed not to move the racks.

Q. I understand that. But he could have moved it, could he not?

A. Possibly. * * *"

We have thoroughly examined the record and have found no evidence that the subject newspaper rack was caused to be placed in its allegedly dangerous location in Golden's Cafe (where it was at the time of plaintiff's fall) by the defendant Publisher, or any of its agents, or employees, rather than by the Cafe's proprietor, Price, or one or more of his agents or employees. The undisputed evidence that Price controlled the location of this rack is too positive and unequivocal to be contradicted by any inference favorable to plaintiff that might reasonably be drawn from the testimony concerning the importance to the newspaper distributor, Fenner, (and presumably to the defendant Publisher) of having the rack standing at the particular location in the Cafe, where it would cause the most newspapers to be sold.

Plaintiff refers to certain "storekeeper" cases, namely, Newberry Co. v. Lancaster, Okl., 391 P.2d 224; Pratt v. Womack, Okl., 359 P.2d 223; J. C. Penney Co. v. Campbell, Okl., 325 P.2d 1056; Great Atlantic & Pacific Tea Co. v. Mullen, Okl., 301 P.2d 217; Armstrong v. Kroger Grocery & Baking Co., (Mo.App.) 78 S.W.2d 564, and Reid v. Monticello, (La.App.) 33 So.2d 760, as furnishing the guidelines to the Publisher defendant's liability and as demonstrating that the trial court committed no error in submitting the question of this defendant's negligence to the jury. These cases might be applicable to the claimed liability of the defendant, Price, but in the absence of any evidence tending to show that the Publisher defendant had anything to do with, or controlled, the location at which the newspaper rack stood in Price's Golden's Cafe, they are not applicable to the matter of this defendant's claimed liability.

Plaintiff also cites McDermott v. Engstrom, (Fla.) 81 So.2d 553, as "being nearly on all 'fours' with our case * * *". Some of the defendants in that case were co-owners of a cafeteria and a newspaper publishing company, and, as far as can be ascertained from the Florida Supreme Court's opinion therein, the alleged facts concerning the way in which the plaintiff

there was injured are similar to those here; but the opinion merely determined that the allegations of her amended complaint were a sufficient basis for the filing of an answer; and reversed the circuit court's dismissing of said complaint on the motions of the defendants. The dismissal of such a case would also be error in this jurisdiction, upon a finding by this Court that such a plaintiff's pleading stated a cause of action against any of such defendants. In this connection, notice Robinson v. Rockett, Okl., 275 P.2d 712 (3rd syll.).

As far as the opinion in the above cited case shows, it did not reach the question with which we are concerned here, because, there, no evidence had been introduced and it had not yet been shown whether or not the Publishing Company had anything to do with designating the location of the newspaper rack in the involved cafeteria. Here, it has been shown, by undisputed evidence, that such defendant did not designate, or control, the location of the rack.

As far as the evidence shows, the newspaper rack in this case was the subject of a gratuitous bailment from the Publisher, or one of its agents, as bailor, to the defendant cafe operator, Price, as bailee. As said in Hammerbeck v. Hubbard, 42 Wash.2d 204, 254 P.2d 479, 484:

> "The bailor cannot be held responsible to a third person for injuries resulting from his bailee's negligent use of the bailed property, in the absence of any control exercised by the bailor at the time of the negligence."

See also 8 Am.Jur.2d, Bailments, § 259, and other cases cited in footnote 9 of that section. As plaintiff's cause of action in this case was based solely on the use of the involved newspaper rack, in the particular location at which plaintiff testified she did not see it, and, for that reason, was caused by it to fall, and the undisputed evidence showed that the Publisher defendant did not put it there, cause it to be placed there, or exercise any dominion, or control, over its being placed there, and there was no evidence that it had any right to do so, the trial court should have sustained said defendant's motion for a directed verdict.

In accord with the foregoing, we hold that said court's overruling of said motion was error, and, for that error alone, it should have sustained said defendant's motion for a new trial. Said court's order or judgment overruling the latter motion (from which the present appeal has been perfected) is therefore reversed, and this cause is remanded to said court with directions to sustain said motion.

BERRY, V. C. J., and WILLIAMS, JACKSON, HODGES, LAVENDER and McINERNEY, JJ., concur.

IRWIN, C. J., and DAVISON, J., concur in result.