David Allen MILES and LuAnn Miles, Appellees,

v.

Nellie Mae SEIGLE, Appellant.

No. 49860.

Court of Appeals of Oklahoma, Division No. 1.

Aug. 2, 1977.

Rehearing Denied Oct. 4, 1977.

Released for Publication by Order of Court of Appeals Oct. 7, 1977.

Jack B. Sellers, Sapulpa, for appellees.

Maurice E. Lampton, Sapulpa, for appellant.

BOX, Judge:

An appeal by Nellie Mae Seigle, defendant, from a jury verdict on behalf of David Allen Miles and LuAnn Miles, plaintiffs, in an action for personal injuries and property damage, arising from an automobile-motorcycle accident.

This action was filed by appellees, David Allen Miles and LuAnn Miles, husband and wife, against appellant, Nellie Mae Seigle, seeking recovery of damages for personal injuries received by David Allen Miles in a motorcycle-automobile collision.

In substance the appellants alleged that David Allen Miles was seriously injured when appellee suddenly turned her car across two lanes of oncoming traffic directly into the path of a motorcycle being driven by David Allen Miles.

In addition, appellee LuAnn Miles brought suit against appellant for loss of her husband's support, assistance and counsel. The cases were consolidated for trial purposes and from a jury verdict in favor of appellees, appellant brings this appeal.

Appellant contends reversible error was committed in four respects, to-wit:

1. By requesting, in the presence of the jury, a copy of a statement given by appellant to a person whose name appellees' counsel mentioned four times whom two of the jurors knew to be an insurance adjuster, he injected insurance into the case. Although there has been some confusion regarding the pre-trial ruling on the part of both counsel, the court previously had denied appellees' request for a copy of said statement.

2. That appellee had previously requested said statement by motion, and in

its pre-trial order the court denied the same to appellee.

3. By being compelled to object to this improper demand, appellant thereby substantially injured her chances with the jury by making it appear she was trying to hide something from them.

4. That viewing this in context with the remainder of his cross-examination, including the statement shown at Transcript, page 325, lines 10 through 12: "No ma'am, and you understand in my position in this lawsuit that I don't hold any ill feelings toward you one way or the other," created an unmistakable inference of insurance to which appellant's counsel objected.

Although neither attorney appeared to know what transpired at the pre-trial, the record clearly reflects that appellee filed a motion for order directing defendant to produce items for inspection and copying. Attached to this motion was a letter of six requests, with request No. 6 being a request for the "Transcript of any tape recorded interview or notes of interview taken by defendant or her agents or her insurance adjustors having to do with the occurrence of the collision following interview with defendant, plaintiff, or any other witnesses to the collision on August 25, 1973." Subsequent thereto, appellee filed a motion on October 30, 1974, with the caption of "Motion for In Camera Examination of Transcript," wherein a similar request was made that this information be shown or produced for appellee. On November 7, 1974, the court in its pre-trial order in paragraph 2 ruled:

Upon reconsideration of plaintiff's motion for order directing defendant to produce items for inspection and copying, it is the order of the court that paragraph six of letter attached to said motion is hereby overruled and plaintiff allowed exception.

In spite of this ruling appellant's attorney, during cross-examination of appellee and in front of the jury, asked the following questions regarding the statement, to-wit:

Q . I believe it was June 25, 1974. Now, ma'am, That Statement was given before Mr. Lampton began to represent you, wasn't it?

A Yes, sir.

\*      \*      \*      \*      \*      \*

Q In any event, the statement you made on Monday, the 27th of August, 1973, was when the events were fresher on your mind and before anyone other than *Mr. Zumwalt had* and the police officer, I believe you visited with, talked to you about the matter, isn't that true? (Emphasis supplied.)

A That's right.

MR. SELLERS: Your Honor, at this time, we would renew our request that we be permitted to see and inspect a copy of that statement and use it in connection with cross examination of the witness in a way that it may vary from her testimony from the stand.

After a discussion with the judge and after objections by appellant's counsel, the following request was made:

MR. SELLERS: If Your Honor please, if I may ask you to take this request under advisement and allow me to continue with it for part of my cross examination, I think Your Honor will see that it is as timely as I could make it, and I will—I mean, this request and that I will explain further outside of the hearing of the jury, if I may.

THE COURT: You may continue.

Thereafter, following a protracted cross-examination of appellant wherein many references were made regarding appellant's actions, and discussions with other persons directly after the accident, the following occurred in front of the jury:

MR. SELLERS: Now, if Your Honor please, at this point, I would renew my request for the right to have a copy and inspect the copy and use a copy of the August 27, 1973, tape recorded interview of Mrs. Seigle concerning this accident

before concluding my cross examination of her. May I approach the bench?

THE COURT: Yes.

After the conversation at the bench, the court made the following ruling and statement:

THE COURT: I will overrule your request, Mr. Sellers, and give you an exception. I am going to take Mr. Lampton's request for mistrial under advisement, the method in which you asked for it in open court before the jury for the moment.

Whereupon the cross-examination was terminated.

Thereafter and during the examination of appellees' witness, a Mr. Forest H. Walker, who witnessed the accident, with the jury not being present, the following in part occurred:

MR. LAMPTON: To keep me from reimposing my objection, I now renew my motion for mistrial because of *misconduct of counsel in alluding to a statement taken by Mr. Zumwalt who had lived in Sapulpa, was familiar with Sapulpa and who is generally known as an insurance adjuster* and that injected prejudice before the Jury that put the Defendant in a compromising position she would not have been in otherwise. (Emphasis added.)

From a review of the actions of appellees' attorney and the continued injection of a supposed statement made by appellant, together with the mentioning of the name of a known insurance adjuster, and together with the fact that the affidavits of two jurors submitted by appellee, one of whom was the foreman, revealed that both had had occasion to transact business with Mr. Zumwalt in his capacity as an insurance adjuster, apparently with some unfavorable results. We agree with appellant that a new trial should be granted. See *Redman v. McDaniel,* Okl., 333 P.2d 500; *Pratt v. Womack,* 359 P.2d 223; *Smith v. Hanewinckel,* Okl., 405 P.2d 99, and cases cited therein.

Not only was the attorney's conduct prejudicial as stated above, the Supreme Court in the case of *Horany v. Paris,* 369 P.2d 636, wherein a judgment for plaintiff was reversed, stated as follows:

In our opinion, the efforts of plaintiff's counsel to inject into the case and bring before the just such incompetent and prejudicial evidence against the rulings and admonishments of the trial court was highly improper, and such misconduct amounted to reversible error.

We quote with approval from *Raefeldt v. Koenig,* 152 Wis. 459, 140 N.W. 56, L.R.A. 1918E, 1052, wherein the court said:

" * * * *When an attorney has obtained a ruling from the trial court in a form which fairly raises a question as to the admissibility of the evidence sought to be introduced, courtesy to the court should forbid a wilful repetition of the effort,* even though the evidence sought to be introduced is not clothed with innuendoes prejudicial to the other side. Much more should such effort cease when it is apparent that the offered evidence is ruled out because it is held to be immaterial, irrelevant, and harmful. *Efficient discharge of judicial duty also requires on the part of the trial judge prompt and emphatic disapproval of such conduct, with suitable admonition to the jury to disregard it, to the end that the real issues may be passed upon freed from irrelevant and prejudicial matter.*" (Emphasis added.)

\* \* \* \* \* \*

We hold there where in a jury trial an attorney deliberately injects into the case highly improper questions which have for their only purpose reflections upon the character of the witness, mild rebukes of counsel guilty of such prejudicial conduct cannot be held to cure the injury resulting from such action, and such action constitutes reversible error.

See *Harrod v. Sanders,* Okl., 278 P. 1102, Syl. 2.

We are finding from our review of the cases before us that more attorneys are deliberately disregarding the rulings of the

trial court in an attempt to get before the jury certain facts not pertinent to the case; this court will not approve such actions.

REVERSED FOR NEW TRIAL.

REYNOLDS, P. J., and ROMANG, J., concur.